**The STATE of Ohio, Appellee,**

**v.**

**WEBER, Appellant.**

[Cite as *State v. Weber* (1997), 125 Ohio App.3d 120.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APA06–777.

Decided Dec. 31, 1997.

**122**

*Ronald J. O'Brien*, Franklin County Prosecuting Attorney, and *Steven L. Taylor*, Assistant Prosecuting Attorney, for appellee.

*Kenneth R. Spiert*, for appellant.

LAZARUS, Judge.

Defendant-appellant, Maria J. Weber, appeals from a May 8, 1997 judgment entry in the Franklin County Court of Common Pleas denying her motion to withdraw her 1990 guilty plea to attempted theft, a violation of R.C. 2923.02 as it relates to 2913.02. Appellant contends that her guilty plea might be set aside under R.C. 2943.031(D) because the trial court failed to advise her, as required by that statute, of the possible consequences that her guilty plea might have on her immigration status. Appellant also contends that the judgment should be reversed because the trial court violated the attorney-client privilege by ordering appellant's former trial counsel to testify as to what advice counsel gave appellant regarding the possible effects her guilty plea might have on her immigration status. Because we hold that the trial court incorrectly applied the mandates of R.C 2943.031(D) for setting aside a guilty plea, we reverse the judgment below.

Appellant is a citizen of Poland. In October 1989, appellant and her daughter from a previous marriage legally entered the United States to live with her husband, a U.S. citizen.

On May 23, 1990, the Franklin County Grand Jury indicted appellant on one count of theft and one count of possession of criminal tools related to an incident in which appellant was caught attempting to steal $400 worth of clothing from a Lazarus department store. On November 12, 1990, appellant agreed to plead guilty to a lesser included offense of count one, attempted theft, in exchange for a *nolle prosequi* on the remaining count of the indictment. At that time, appellant executed an entry of guilty plea form, on which appellant noted that she was not a citizen of the United States, and during the plea hearing, the court was specifically told that appellant was Polish. Thereafter, the court conducted, through an interpreter, a plea dialogue with appellant but did not give the advisement regarding the possible deportation consequences of her guilty plea as required by R.C. 2943.031. The trial court accepted appellant's plea and on December 17, 1990, sentenced appellant to six months in jail, suspended on condition of serving a two-year term of probation. On December 16, 1992, the trial court discharged appellant from probation.

On March 21, 1997, appellant filed a motion to vacate or withdraw her guilty plea. Appellant's motion was based on the trial court's failure to advise appellant of the possible consequences that her guilty plea might have had on her immigration status and that this failure required the guilty plea to be vacated under R.C. 2943.031 and the Sixth and Fourteenth Amendments to the United States Constitution. According to appellant, the Immigration and Naturalization Service ("INS") initiated deportation proceedings against appellant in 1994 based on appellant's conviction in the instant case and a subsequent conviction for theft in January 1994. Appellant contends that, while her convictions made her automatically deportable under federal law, she was able to defend against the deportation through a "waiver of deportation" provision based upon family hardship available to alien spouses of United States citizens. According to appellant, this defense became unavailable due to recent amendments to the United States immigration laws and the death of appellant's husband in 1996. As a result, appellant contends that, to prevent her deportation, it became necessary to challenge the criminal charges underlying the deportation proceedings, including appellant's conviction in this case.

On May 7 and 8, 1997, the trial court held a hearing on appellant's motion. At the hearing, appellant testified that, if the trial court had given the advisement required under R.C. 2943.031(A), she would not have entered a guilty plea but would have taken the case to trial. Appellant also presented evidence that the INS had instituted deportation proceedings against her because of her conviction. In opposition to the motion, appellee, state of Ohio, presented evidence that, after the guilty plea in this case, appellant entered guilty pleas on two separate occasions and that appellant did so even after being specifically advised by the court as to the potential deportation consequences. In addition, the state called appellant's former counsel to testify. Over appellant's objection and after being ordered to testify by the trial court, appellant's former counsel testified that, prior to the plea hearing in November 1990, he advised appellant of the possibility of deportation if she was convicted, using her husband as an interpreter. Appellant's former counsel further testified, however, that he did not know whether appellant actually understood the potential deportation consequences of a conviction at the time appellant entered her guilty plea in November 1990.

At the conclusion of the hearing, the trial court overruled appellant's motion to withdraw her guilty plea. The court concluded that appellant was entitled to the advisement regarding possible deportation consequences under R.C. 2943.031(A) and that the trial court failed to give the advisement. The trial court held, however, that appellant was not prejudiced because appellant would have pled guilty even if he had given the advisement. In other words, appellant failed to show that the trial court's failure to advise appellant was, in the words of

appellant's brief, "outcome determinative" of appellant's decision to plead guilty. In addition, the trial court held that appellant failed to show manifest injustice as required under Crim.R. 32.1 to withdraw a guilty plea after sentencing. In particular, the trial court stated:

"However, in reviewing the facts in this case, your client has said that the failure of me to give that advice influenced her plea; had I given her that advice under no circumstances would she have entered that plea.

"The court finds your client is absolutely not credible at all. She is not a credible witness. Not only her record of five, I believe, five prior theft offenses that have been admitted to, your client is not credible on the witness stand and the lack of credibility was supported by the testimony of her own counsel. The court believes that she had an awareness, and not a particular awareness, but an awareness, there may be deportation consequences and there's no doubt the defendant at every subsequent plea that she has entered she has been advised of her deportation consequences.

" * * *

"But more importantly, we are talking about manifest injustice and manifest injustice deals with the entire system. It also deals with your client. What injustice has been done in this case? The injustice has not been that your client has been deported as a result of this court's lack of giving her notice; the injustice is your client, one, sitting around for six years and not taking any action with respect to my lack of notice that she at least knew about in 1992; injustice to the system is for your client to sit around and wait for the ramifications for six years and when the prejudice takes place, oh, my heavens, now I want to go back.

" * * *

"The court believes any prejudice that happens to your client happened on her own actions, happened as a result of her husband dying, change in the immigration law, and there's no prejudice by what I failed to do. There's no doubt I failed to do that."

The trial court's decision was formally entered on May 8, 1997. Appellant timely appealed the May 8, 1997 judgment entry, raising the following two assignments of error:

1. "The trial court committed prejudicial error in concluding that appellant failed to establish prejudice, within the meaning of R.C. § 2943.031(D), from the court's failure to provide the advice required by R.C. § 2943.031(A)."

2. "The trial court committed prejudicial error and denied Weber due process under the Ohio and United States Constitutions when it ordered Weber's former

trial counsel to testify absent a waiver of the attorney–client privilege pursuant to R.C. § 2317.02."

■ In her first assignment of error, appellant contends that neither the "outcome determinative" test of prejudice nor the manifest injustice standard of Crim.R. 32.1 applies to a motion to withdraw a guilty plea under R.C. 2943.031(D). Appellant contends that a withdrawal of a guilty plea is mandatory under R.C. 2943.031 if the defendant establishes that the advisement was required to be given, the trial court failed to give the advisement, and there has been some adverse immigration consequence of the guilty plea. In so arguing, appellant does not directly challenge the trial court's factual determination that appellant still would have pled guilty even if the trial court had given the advisement. Nor does appellant directly challenge the determination that appellant failed to prove manifest injustice as required under Crim.R. 32.1.

R.C. 2943.031, enacted by the General Assembly and signed by the Governor in 1989, generally requires that before accepting a guilty or no contest plea, a trial court must advise a noncitizen defendant that his plea may have consequences on his immigration status. The statute also establishes a procedure for withdrawal of the guilty plea if the advisement is not given. In particular, R.C. 2943.031 states:

"(A) Except as provided in division (B) of this section, prior to accepting a plea of guilty or a plea of no contest to an indictment, information, or complaint charging a felony or a misdemeanor other than a minor misdemeanor if the defendant previously has not been convicted of or pleaded guilty to a minor misdemeanor, the court shall address the defendant personally, provide the following advisement to the defendant that shall be entered in the record of the court, and determine that the defendant understands the advisement:

" 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense to which you are pleading guilty (or no contest, when applicable) may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.'

"Upon request of the defendant, the court shall allow him additional time to consider the appropriateness of the plea in light of the advisement described in this division.

" * * * *

"(D) Upon motion of the defendant, the court shall set aside the judgment and permit the defendant to withdraw a plea of guilty or no contest and enter a plea of not guilty or not guilty by reason of insanity, if, after the effective date of this section, the court fails to provide the defendant the advisement described in

division (A) of this section, the advisement is required by that division, and the defendant shows that he is not a citizen of the United States and that the conviction of the offense to which he pleaded guilty or no contest may result in his being subject to deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

"(E) In the absence of a record that the court provided the advisement described in division (A) of this section and if the advisement is required by that division, the defendant shall be presumed not to have received the advisement.

"(F) Nothing in this section shall be construed as preventing a court, in the sound exercise of its discretion pursuant to Criminal Rule 32.1, from setting aside the judgment of conviction and permitting a defendant to withdraw his plea."

Under the clear and unambiguous language of subsection (D) of the statute, a trial court *shall* set aside a conviction and allow the defendant to withdraw a guilty plea if four requirements are established: (1) the court failed to provide the advisement described in the statute, (2) the advisement was required to be given, (3) the defendant is not a citizen of the United States, and (4) the offense to which the defendant pled guilty may result in the defendant being subject to deportation, exclusion, or denial of naturalization under federal immigration laws. Thus, under the plain language of the statute, there is no requirement that a defendant establish that he would not have otherwise pled guilty or that the withdrawal of the guilty plea is necessary to correct a manifest injustice. Moreover, as evidenced by the use of the mandatory term "shall," the trial court has no discretion and must set aside the conviction as long as the four statutory requirements are met.

Despite the seemingly unambiguous language of the statute, the state contends that an "outcome determinative" prejudice standard and manifest injustice standard should be judicially recognized. In general, the state argues that because harmless error cannot form the basis of relief, see Crim.R. 52, this court should apply the same requirement applied by appellate courts when a trial court fails to substantially comply with Crim.R. 11's advisement provisions related to nonconstitutional rights, *i.e.*, that the defendant show that the plea would not have been entered had the trial court complied with this rule. See *State v. Nero* (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474, 476–477. Furthermore, the state contends that a manifest injustice standard is mandated by Crim.R. 32.1.

In support of its argument for an outcome determinative test, the state relies on *State v. Esqueda* (Sept. 30, 1996), Franklin App. No. 96APA01–118, unreported, 1996 WL 550277; *State v. Ikharo* (Sept. 10, 1996), Franklin App. No. 95APA11–1511, unreported, 1996 WL 517612; and *State v. Clark* (Mar. 10, 1994), Cuyahoga App. No. 64630, unreported, 1994 WL 78318. Unlike the instant case, however, all three of these cases involved direct appeals of guilty pleas and did

not involve appeals of motions made in the trial court to withdraw the plea pursuant to R.C. 2943.031(D). Therefore, a plain error standard was implicated, either explicitly (as in *Esqueda*) or implicitly (as in *Ikharo* and *Clark*). Moreover, none of the cases cited by the state involved defendants who otherwise satisfied all the statutory requirements for relief under R.C. 2943.031(D). As a result, we do not read these cases as requiring a defendant who seeks to withdraw a guilty plea pursuant to an R.C. 2943.031(D) motion properly filed in the trial court to show that he would not have pled guilty if the trial court complied with the advisement requirements of the statute.

In *Esqueda, supra,* we overruled a defendant's assignment of error premised upon the trial court's failure to give the advisement required by R.C. 2943.031(A) before accepting a guilty plea. In so doing, we noted that the defendant failed to bring a motion to vacate the judgment in the trial court and that, therefore, the defendant waived the issue on appeal absent a finding of plain error. We then stated that *"[p]lain error does not exist unless it can be said that but for the error the outcome of the trial or proceeding would clearly have been otherwise."* (Emphasis added.) Finding that the defendant had failed to even allege that the advisement would have influenced his decision to plead guilty, we concluded that in the absence of such prejudice, defendant "failed to demonstrate *plain error.*" (Emphasis added.) Thus, *Esqueda* stands for the simple proposition that a defendant must show that he would not have otherwise pled guilty *when* the plain error standard is implicated. Here, appellant filed her R.C. 2943.031(D) motion in the trial court, and thus the plain error standard and the holding in *Esqueda* do not apply.

Similarly, in *Ikharo, supra,* this court also overruled a challenge to a guilty plea premised, in part, upon the trial court's failure to give the R.C. 2943.031(A) advisement. Our decision in this regard was based upon three separate findings. Unlike this case, we found that the trial court substantially complied with the requirements of R.C. 2943.031(A) and that the defendant failed to show any adverse consequence to his citizenship status as a result of his plea. Additionally, we found that the record failed to indicate that the defendant would not have pled guilty if the trial court had read the advisement verbatim. Thus, while the state highlights the third rationale for our decision in *Ikharo* as supporting a general requirement that a defendant must always show that he would have pled differently in his R.C. 2943.031(D) motion, we point out that this rationale was not necessary to our decision. Moreover, we further note that, like the defendant in *Esqueda,* the defendant in *Ikharo* challenged his guilty plea on direct appeal and did not file a motion to withdraw his guilty plea in the trial court. Therefore, as in *Esqueda,* the plain error standard, though never explicitly stated, was implicated by the facts of *Ikharo.*

Finally, in *Clark, supra,* the Cuyahoga County Court of Appeals was also faced with a direct appeal of a guilty plea. The court affirmed the conviction, holding that the defendant could not show prejudice because he did not claim to be a non-U.S. citizen and because he did not show how the advisement would have influenced his decision to plead. Thus, like *Ikharo,* the finding that the defendant would not have pled differently was not necessary to the decision of the court, and as in *Ikharo,* the plain error standard, while not explicitly stated, was implicated by the facts.

We recognize that these cases do show that courts have applied judicially created concepts generally applicable to motions to withdraw guilty pleas (*e.g.,* the plain error rule and substantial compliance doctrine) to appeals claiming a violation of R.C. 2943.031. We point out, however, that none of these cases applied such concepts in a context where an R.C. 2943.031(D) motion was filed in the trial court and the plain error standard was not implicated. Moreover, none of the cases applied such concepts in the face of clear language revealing a legislative intent to the contrary. "Where the words of a statute are free of ambiguity and express plainly and distinctly the sense of the lawmaking body, the courts should look no further in their efforts to interpret the intent of the General Assembly." *State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672, 674; *Wingate v. Hordge* (1979), 60 Ohio St.2d 55, 58, 14 O.O.3d 212, 214, 396 N.E.2d 770, 772 ("[W]here the terms of a statute are clear and unambiguous, the statute should be applied without interpretation."). Here, R.C. 2943.031(D) states that the trial court *shall* set aside a conviction if four specific requirements are met. Significantly, a requirement that the defendant establish that he would not have pled guilty if the proper advisement had been given is not included in the statute. Given the General Assembly's explicit listing of the specific requirements that must be satisfied for the withdrawal of a conviction under R.C. 2943.031(D), we must conclude that the legislature did not intend that a defendant also show that he would not have pled guilty if the advisement had been made. Cf. *Akron Transp. Co. v. Glander* (1951), 155 Ohio St. 471, 480, 44 O.O. 435, 439, 99 N.E.2d 493, 497 ("It is one of the well recognized canons of statutory construction that when a statute directs a thing may be done by a specified means or in a particular manner it may not be done by other means or in a different manner.").

Our holding in this regard is supported by the recent Cuyahoga County Court of Appeals decision in *State v. Felix* (Apr. 17, 1997), Cuyahoga App. No. 70898, unreported, 1997 WL 186838. In *Felix,* the defendant pled guilty in February 1993 to two counts of drug trafficking and was sentenced accordingly. Three years later, in February 1996, the defendant filed a motion to withdraw his guilty plea pursuant to R.C. 2943.031(D). The trial court denied the motion, and the

court of appeals reversed. In so doing, the court recognized that there must be some showing of prejudice resulting from the trial court's failure to advise the defendant before a motion to vacate a guilty plea under R.C. 2943.031(D) will be granted. The court held, however, that the defendant satisfied this requirement when he produced evidence that the conviction to which he pled guilty resulted in a deportation order against him. The court made no mention of a requirement that the defendant additionally show that he would not have pled guilty if the advisement had been read and concluded that the trial court erred by failing to follow the "explicit mandate" of R.C. 2943.031(D).

We concur in the results of *Felix* and hold that the trial court similarly erred in this case by requiring appellant to establish that she would not have pled guilty if the trial court had complied with the advisement requirements of R.C. 2943.031(A). Similarly, we also hold that the trial court erred in requiring the appellant to show manifest injustice to obtain relief pursuant to R.C. 2943.031(D).

The state argues that, because appellant's R.C. 2943.031 motion was made after her sentencing, appellant was required to show that the withdrawal of her guilty plea is necessary to correct a manifest injustice as required by the express terms of Crim.R. 32.1. Crim.R. 32.1 provides:

"A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

While Crim.R. 32.1 generally governs the withdrawal of guilty pleas, the state cites no case authority directly applying the manifest injustice standard to a motion to withdraw a guilty plea filed under R.C. 2943.031(D), and our independent research has found none. Given this lack of authority, we again rely on the explicit language of R.C. 2943.031 to resolve the matter. As we noted above, R.C. 2943.031(D)'s explicit language mandates that a trial court set aside a judgment of conviction and allow a defendant to withdraw his guilty plea if the defendant satisfies four requirements. Showing manifest injustice is not included as one of the requirements. Thus, as with our refusal to impose an additional requirement that a defendant establish that he would not have otherwise pled guilty, we will not impose an additional requirement that the defendant show manifest injustice. Moreover, we point out that the General Assembly saw fit to include the language of R.C. 2943.031(F), which states that nothing in the statute prevents a court from setting aside a conviction and guilty plea pursuant to Crim.R. 32.1. This language, combined with the explicit language of R.C. 2943.031(D), persuades us that the General Assembly intended that R.C. 2943.031(D) be an independent means of withdrawing a guilty plea separate and apart from and in addition to the requirements of Crim.R. 32.1.

██ The state argues that to the extent that R.C. 2943.031(D) does not include the manifest injustice standard of Crim.R. 32.1, the statute conflicts with the rule and is an improper infringement by the General Assembly on the Supreme Court's rule-making authority under Section 5(B), Article IV, of the Ohio Constitution. While we recognize that our interpretation of the statute conflicts with Crim.R. 32.1, at least when a motion to withdraw a guilty plea is made after sentencing, we disagree that the statute, so interpreted, infringes on the Supreme Court's rule-making authority.

Section 5(B), Article IV of the Ohio Constitution, provides:

"The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. Proposed rules shall be filed by the court, not later than the fifteenth day of January, with the clerk of each house of the general assembly during a regular session thereof, and amendments to any such proposed rules may be so filed not later than the first day of May in that session. Such rules shall take effect on the following first day of July, unless prior to such day the general assembly adopts a concurrent resolution of disapproval. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

██ Rules promulgated pursuant to this constitutional provision must be procedural in nature. Where a conflict arises between a rule and a statute, the rule will control on matters of procedure. *Boyer v. Boyer* (1976), 46 Ohio St.2d 83, 86, 75 O.O.2d 156, 157–158, 346 N.E.2d 286, 288. Conversely, a rule may not abridge, enlarge, or modify any substantive right and a statute will control on matters of substantive law. *Id.; State v. Slatter* (1981), 66 Ohio St.2d 452, 454, 20 O.O.3d 383, 384–385, 423 N.E.2d 100, 101–102. " 'Substantive' means that body of law which creates, defines and regulates the rights of the parties." *Krause v. State* (1972), 31 Ohio St.2d 132, 145, 60 O.O.2d 100, 107, 285 N.E.2d 736, 744; accord *State ex rel. Beacon Journal Publishing Co. v. Waters* (1993), 67 Ohio St.3d 321, 323, 617 N.E.2d 1110, 1112–1113. In general, "procedural" refers to the methods of enforcing such rights or obtaining redress. *Krause, supra.*

While these general rules are easily stated, they are not so easily applied. As the Ohio Supreme Court noted in *Gregory v. Flowers* (1972), 32 Ohio St.2d 48, 56, 61 O.O.2d 295, 299, 290 N.E.2d 181, 186, at least one commentator has questioned whether the distinction between substantive and procedural law has any meaning at all:

" 'The distinction between substantive and procedural law is artificial and illusory. In essence, there is none. The remedy and predetermined machinery, so far as the litigant has a recognized claim to use it, are, legally speaking, part of

the right itself. A right without a remedy for its violation is a command without a sanction, a *brutem fulmen,* i.e., no law at all. While it may be convenient to distinguish between the right or liability, the remedy or penalty by which it is enforced, on the one hand, and the machinery by which the remedy is applied to the right, on the other, i.e.; between substantive law and procedural law, it should not be forgotten that so far as either is law at all, it is the litigant's right to insist upon it, i.e., it is part of his right. In other words, it is substantive law.' " *Id.,* quoting Chamberlayne, Modern Law of Evidence (1911) 217.

Despite the inherent difficulty with the inquiry, we nonetheless find that R.C. 2943.031 confers substantive rights and as such is not superseded by any conflicting provision of Crim.R. 32.1.

In *Cuyahoga Falls v. Bowers* (1984), 9 Ohio St.3d 148, 9 OBR 438, 459 N.E.2d 532, the Ohio Supreme Court addressed an issue similar to that presented here. In *Bowers,* the court was asked to determine whether R.C. 2937.07, relating to no contest pleas to minor misdemeanors, was superseded by conflicting provisions in Crim.R. 11. Under R.C. 2937.07, a judge is required to take an "explanation of circumstances" on a plea of no contest before entering a judgment of guilty. Crim.R. 11 includes no such requirement. Finding that the statute conferred a " 'substantive right to be discharged by a finding of not guilty where the statement of facts reveals a failure to establish all of the elements of the offense,' " the Supreme Court of Ohio held that the statute was not procedural and hence not superseded by the conflicting provisions of Crim.R. 11. *Id.* at 150, 9 OBR at 440, 459 N.E.2d at 535, quoting *Springdale v. Hubbard* (1977), 52 Ohio App.2d 255, 259–260, 6 O.O.3d 257, 259–260, 369 N.E.2d 808, 811–812.

Similarly, in *State v. Hughes* (1975), 41 Ohio St.2d 208, 70 O.O.2d 395, 324 N.E.2d 731, the Supreme Court of Ohio addressed the conflicting provisions of R.C. 2945.67 through 2945.70 (subsequently amended) and App.R. 4(B) governing the prosecution's ability to appeal orders granting motions to suppress. Under the statutes, the prosecution could appeal such orders only upon the discretion of the court of appeals. Under App.R. 4(B), however, the prosecution could appeal such orders as of right. Finding that the relevant statutes conferred and prescribed the substantive rights of prosecutors to bring appeals, the Supreme Court held that the conflicting provisions of App.R. 4(B) could not be applied. As the court stated:

"The effect of R.C. 2945.67 through 2945.70 is to grant jurisdiction to appellate courts to hear appeals by the prosecution in criminal cases and to create a *substantive* right in the prosecution to bring such appeals in the instances permitted by R.C. 2945.70 and the decisions interpreting that section.

"Moreover, the right created and the jurisdiction granted by R.C. 2945.67 through 2945.70 is limited. Those sections, as well as specifying the procedure to

be followed in bringing an appeal, also limit the right of appeal by granting appellate courts discretion as to which cases will be allowed for review.

"App.R. 4(B), in providing an appeal as of right by the prosecution, enlarges the statutory right of appeal provided by R.C. 2945.67 through 2945.70 and abridges the right of appellate courts to exercise their discretion in allowing such appeals.

"App.R. 4(B) is in conflict with a *substantive* statutory provision and must yield to it." (Emphasis *sic*.) *Id.* at 210–211, 70 O.O.2d at 397, 324 N.E.2d at 733. See, also, *State v. Waller* (1976), 47 Ohio St.2d 52, 1 O.O.3d 32, 351 N.E.2d 195, paragraph one of the syllabus (provisions in Crim.R. 12[J] permitting prosecution to appeal as of right from pretrial orders granting motions to suppress found unconstitutional to the extent in conflict with R.C. 2945.67 through 2945.70).

Here, R.C. 2943.031 is similar to those statutes found to confer substantive rights in *Bowers* and *Hughes, supra*. While generally dealing with what purports to be a matter of procedure, *i.e.,* the acceptance and withdrawal of guilty pleas, the statute also creates specific substantive rights where no such rights existed before. Cf. *Slatter, supra,* 66 Ohio St.2d at 458, 20 O.O.3d at 387, 423 N.E.2d at 104 (finding that R.C. 2935.26 created a substantive right because it precluded arrest for a minor misdemeanor where "no such right existed before"). Particularly, these include the right to be advised by the court that one's guilty plea may have consequences on one's immigration status and the right to withdraw a guilty plea if the trial court fails to make the advisement and when certain other statutory requirements are met. Significantly, prior to the enactment of R.C. 2943.031 in 1989, neither of these rights was available to defendants. See *State v. Odubanjo* (1992), 80 Ohio App.3d 329, 333, 609 N.E.2d 207, 209 ("Prior to the legislative enactment of R.C. 2943.031, the burden of advising defendants of this deportation consequence was incumbent upon defendant's counsel. Then, to argue such error, defendant had to show prejudice for ineffective assistance of counsel."). Accordingly, we hold that R.C. 2943.031 confers substantive rights and hence is not superseded by Crim.R. 32.1's conflicting provisions requiring the showing of manifest injustice to withdraw a guilty plea after sentencing. Therefore, the trial court erred in requiring appellant to establish manifest injustice in her motion to withdraw her guilty plea pursuant to R.C. 2943.031(D).

For these reasons, appellant's first assignment of error is well taken. Moreover, because appellant's right to the relief afforded under R.C. 2943.031(D) is evident from the record, we enter judgment for appellant setting aside her conviction and withdrawing her guilty plea. See App.R. 12(B).

Because our decision on appellant's first assignment of error is dispositive of the matter before us, we find that appellant's second assignment of error is moot. See App.R. 12(A).

For the foregoing reasons, appellant's first assignment of error is sustained, her second assignment of error is moot, and the judgment of the Franklin County Court of Common Pleas is reversed.

*Judgment reversed.*

TYACK, P.J., concurs.

PEGGY BRYANT, J., dissents.

PEGGY BRYANT, Judge, dissenting.

Because I disagree with the majority's disposition of this matter, I respectfully dissent.

Applying the strict language of R.C. 2943.031(D), the majority concludes that the trial court must be reversed and instructed to vacate the guilty plea appellant entered in this matter in 1990. Moreover, concluding that the statute is substantive, not procedural, the majority finds the Rules of Criminal Procedure inapplicable to appellant's motion to withdraw her guilty plea for lack of the stated warnings under R.C. 2943.031.

Since its inception, Crim.R. 11 has governed the procedure for ensuring that a defendant knowingly, intelligently, and voluntarily enters a guilty plea. Similarly, Crim.R. 32.1 has governed the procedure for withdrawing a guilty plea. R.C. 2943.031 carves out an exception to those rules, and seems to require that a trial court apply its terms rather than those set forth in Crim.R. 11 and 32.1 in the limited circumstances encompassed by the statute. In particular, while Crim.R. 11 does not mention deportation consequences among those items of which a defendant must be advised before his or her guilty plea is accepted, R.C. 2943.031(A) requires a trial court to advise a defendant of possible deportation consequences under the circumstances specified in the statute. Similarly, although Crim.R. 32.1 requires manifest injustice to support withdrawing a guilty plea, the literal language of R.C. 2943.031 indicates that the plea shall permit a defendant to withdraw a guilty plea if the R.C. 2943.031(A) warning is not given and the defendant is subject to possible deportation. In that regard, the statute and rule appear to conflict. Because R.C. 2943.031 appears to conflict with the pertinent Criminal Rules, an effort must be made to render R.C. 2943.031 and the rules compatible. See *State v. Heyden* (1992), 81 Ohio App.3d 272, 610 N.E.2d 1067. If the statute and rules prove irreconcilable, then we would be required to determine whether R.C. 2943.031 is an encroachment on the Supreme Court's

authority to promulgate rules under the Modern Courts Amendment, Section 5(B), Article IV, of the Ohio Constitution.

In my opinion, R.C. 2943.031(D) and the relevant rules can be reconciled by looking at the Rules of Criminal Procedure as an overlay to the statute. Thus, while the statute sets out certain requirements for the trial court in accepting a defendant's guilty plea, and specifies certain grounds for granting a defendant's motion to withdraw that plea, the section should be read in the context of Crim.R. 32.1, which allows a guilty plea to be withdrawn only upon a showing of manifest injustice. To accomplish that reconciliation, I interpret R.C. 2943.031(D) to set forth, in effect, a rebuttable presumption that a guilty plea shall be withdrawn if the listed factors are met. The burden then shifts to the state to defeat that result by showing that no manifest injustice occurred through the trial court's failure to warn a defendant in accordance with the statute.[1]

Nor does the foregoing reconciliation render the statute meaningless. To the contrary, the statute specifically requires that the possibility of deportation be a factor not only in accepting the guilty plea but in determining whether that guilty plea may be withdrawn. Absent the statute, deportation might be rendered a natural consequence of criminal activity, but insufficient to raise questions about the propriety of a guilty plea.

Here, the trial court determined that appellant suffered no manifest injustice by the trial court's failure to give the stated warning of R.C. 2943.031(A). Specifically, although the trial court in 1990 failed to warn appellant of the possibility of being deported because of her guilty plea, appellant subsequently pled guilty to two theft offenses after being advised in each of those subsequent offenses of the possible deportation consequences. Moreover, having gained knowledge that her guilty plea in the subsequent theft offenses could lead to her deportation, appellant did not at that time seek to withdraw her guilty plea in the present matter, but waited years after even the subsequent pleas were entered to seek to withdraw her guilty plea in this case. Despite her testimony that she would not have entered her guilty plea in this case had the trial court given her the necessary warning, the trial court's finding to the contrary is supported by the record.

Because the record supports the trial court's finding of no manifest injustice or prejudice to appellant by the trial court's failure to advise appellant of the possible deportation consequences of her guilty plea to the theft offense, the trial

---

1. To the extent necessary, the word "shall" may mean "may" if necessary to the construction of the statute. *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 107–108, 56 O.O.2d 58, 60–61, 271 N.E.2d 834, 837–838.

court properly refused to grant appellant's motion to withdraw her guilty plea under R.C. 2943.031.

Accordingly, I dissent.